P'Pool *v.* Bank and Trust Co.

(*Nashville.* January 18, 1899.)

Power of Attorney. *Revocation of.*

A power of attorney authorizing a trustee to sell lands, make deeds to the purchasers, and collect and distribute proceeds after retaining commissions, cannot be revoked by the makers, after a sale has been made, so as to prevent the execution of deed and perfecting of the purchaser's title, especially where the power of attorney purports, on its face, to be irrevocable, and some of its makers approve the sale and desire its consummation.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. H. H. Cook, Ch.

Lytton Taylor for P'Pool.

J. S. Pilcher for Bank & Trust Co.

Wilkes, J. This is a bill to recover a lot in the city of Nashville, sold by the Union Bank & Trust Company, as trustee, to the defendant, William Litterer, under authority given by the complainants and others to that company.

Complainants are the heirs at law and devisees of E. F. P'Pool, who died at Nashville, in May, 1880, after having made his last will and testament.

In this will he devised his property, real and personal, to his wife, Sarah G. P'Pool, for life, with remainder to his eleven children, to be equally divided between them. The widow died in June, 1895, leaving the eleven children surviving. All of these children, including the husbands of the daughters who had married, entered into a written agreement reciting the devises and describing the property, and stating the death of the father and mother, and that no debts existed against the estate, and that they were desirous of avoiding delay, annoyance, inconvenience, and expense in selling the property and winding up the estate.

The instrument then conveys to the defendant trust company certain real estate in trust for the benefit of the grantees, and directs its sale by the trustee on such terms and conditions as will, in its best judgment, promote the interests of the grantees. The terms of sale were fixed with discretion in the trust company as to credit installments, one-third, however, to be in cash. It was further recited in the instrument that to make sure that the execution of the trust should in no manner be interfered with, embarrassed, or impeded by death or transfer of any interest, the trust should be irrevocable and carried out. The trust company was given power to execute deeds with general warranty, and to collect the proceeds of sale, reserve a commission, and distribute the balance among the grantors.

The trust was accepted by the trust company,

P'Pool *v.* Bank and Trust Co.

and has been executed by selling all the property and by accounting for the proceeds, except in the case of one lot now in controversy. This lot was advertised for sale, and was sold at public sale by the trustee, September 28, 1897, and was bought by Wm. Litterer for $1,550 cash. Up to this time there had been no dissent by the grantors, and no dissatisfaction on their part to anything done by the trustee in execution of the trust.

On October 9, 1897, three of the eleven devisees filed with the trustee a paper attempting to withdraw the power of sale, and notified the trust company not to proceed further with the sale to Litterer. A like notice was given prior to October 17 by another one of the devisees, and soon after two others gave the same notice. Two other grantors claim to have given like notices, which, however, were not received by the trust company.

On November 17, 1897, the trust company conveyed the lot to Wm. Litterer in pursuance of the sale previously made. At the time he purchased, Mr. Litterer knew of no dissent to the sale, and one of the beneficiaries was present. He was informed, however, of the dissent by the trust company before it made the deed, and that the dissenters represented four-elevenths of the property.

The present bill is filed by eight of the eleven interests. The other interests approve the sale and desire its confirmation.

There is no allegation of bad faith or misconduct

on the part of the trustee, but it is claimed the parties have the right to revoke the power before it is completely executed. The Court of Chancery Appeals report the value of the property as $1,500 or $2,000, but say there is much variance of opinion on this point.

We are of opinion the parties dissenting had no power to defeat this sale and conveyance. The instrument was intended to be irrevocable, and it was so expressly stated on its face. This provision was intended to provide for such a contingency as this, and to give power to the trust company, in good faith, to make a sale, even though some interests were not satisfied. The sale was negotiated before any dissent was made. It was done in good faith. It was mutually binding on all—the trustee, the beneficiaries, the purchaser. Each had an interest in its execution. The purchaser had acquired rights which he could enforce. The making of the deed was a duty which the trustee was under to consummate the sale already made and executed. If the dissent had been filed before the sale was negotiated, it may be that it would have had the effect to prevent it, but that having been done in good faith, the dissent could not prevent the making of the deed to carry it into effect.

We think there is no error in the decree of the Court of Chancery Appeals, and it is affirmed.